UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

D. JAMES COON,

                                        Plaintiff,

                                                                    1:13-CV-1306
v.                                                                  (TJM/TWD)

WASHINGTON COUNTY REAL PROPERTY TAX
SERVICES; TOWN OF WHITECREEK {Assessor,
Tax Collector, Justice Court Clerk}; TOWN OF
CAMBRIDGE JUSTICE COURT; CATHERINE A.
BURKLY; MARVIN DAY{RPA GRANVILLE
FAMILY HEALTH, GLENS FALLS HOSPITAL};
AMBER MARRIOT {GLENS FALLS NATIONAL
BANK CORP}; TOWN OF CAMBRIDGE MAYOR
VALERIE REAGAN; TOWN OF WHITECREEK
SUPERVISOR BOB SHEA,

                                        Defendants.
_____

APPEARANCES:

D. JAMES COON
Plaintiff *pro se*
103 CR 71
Cambridge, New York 12816


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

        The Clerk has sent this *pro se* Amended Complaint together with an application to

proceed *in forma pauperis* to the Court for review.  (Dkt. Nos. 2 and 3.)  Plaintiff appears to have

named as Defendants Washington County Real Property Tax Services ("WCRPTS"); Town of

Whitecreek (its Assessor, Tax Collector, Justice Court, and Court Clerk); Town of Cambridge

Justice Court; Catherine A. Burkly ("Burkly"); Marvin Day, RPA (Granville Family Health,

Glens Falls Hospital); Amber Marriot, Glens Falls National Bank Corp.; Town of Cambridge

Mayor Valerie Reagan; and Town of Whitecreek Supervisor, Bob Shea.

Plaintiff asserts subject matter jurisdiction based upon his alleged claims for violation of

his civil rights; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; the

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320, *et*

*seq*.; invasion of privacy; tortious interference with Plaintiff's right to do his own business;

negligence; incompetence; and medical malpractice.  (Dkt. No. 3 at 1-2.)  For the reasons

discussed below, I grant Plaintiff's application to proceed *in forma pauperis* and recommend that

the District Court *sua sponte* dismiss his Amended Complaint pursuant to 28 U.S.C. § 1915(e),

with leave to amend as to only certain defendants and one of the claims asserted in the Amended

Complaint.

## I.  PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

A court may grant *in forma pauperis* status if a party "is unable to pay " the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  A review of Plaintiff's *in forma pauperis*

application reveals that he meets this standard.[1]  Therefore, Plaintiff's application to proceed *in*

---

[1]  In his application, Plaintiff has indicated that he owns no real estate or anything else of value.  (Dkt. No. 2 at 2.)  However, the majority of his claims involve real property and a trailer located at 103 CR 71, Cambridge, New York, which Plaintiff inherited from his mother and owned at the time he filed his application in this matter.  (*See* Dkt. No. 3.)  Plaintiff also makes reference to having gone to court to seek the eviction of a tenant from property owned by him, and it is not clear from the Amended Complaint if the eviction proceedings involved the same property as Plaintiff inherited from his mother or he owns additional property.  *Id*. at 9-11.  It is obvious from Plaintiff's Amended Complaint that he made no attempt to hide his ownership of the real property and trailer from the Court.  Therefore, I will give Plaintiff the benefit of the doubt and assume for the present that the omission from his application was an oversight on his part.  My determination that Plaintiff is entitled to proceed *in forma pauperis* includes consideration of the real property and trailer which, according to the Amended Complaint, have a value of between $29,000 and $59,000.  (Dkt. No. 3 at 7.)  However, in the event Plaintiff files a

2

*forma pauperis* (Dkt. No. 2) is granted.

## II.    ALLEGATIONS OF THE COMPLAINT

### A.    The Trailer Sale Litigation and Alleged Violation of Plaintiff's Privacy Rights

Plaintiff, who is disabled and with his family of three lives on $730.00 per month in social security, inherited real property and a trailer at 103 CR 71 Cambridge, New York in January of 2010. *Id*. at 2, 6. Plaintiff has, on his own, paid all upkeep, taxes, insurance, and done all repairs necessitated by multiple acts of vandalism. *Id.* Some, but not all, of Plaintiff's claims relate to the Cambridge property.

On or about June 12, 2013, Plaintiff placed ads in a number of newspapers for the purpose of selling the trailer on the Cambridge property. *Id*. at 2, 6. After looking at the trailer, Ray Harrington made an $18,000 purchase offer which was accepted by Plaintiff. *Id*. at 2-3. A $1,500 down payment was made, but there were no further payments, and after a few month of "fooling around," the Harrington's "stiffed" Plaintiff on the trailer *Id*. at 3. The Harringtons commenced a small claims court action for $3,000 against Plaintiff in connection with the trailer purchase agreement. *Id*. Plaintiff responded with a lawsuit against the Harringtons before Justice Patrick J. McGrath in Rensselaer County Supreme Court. *Id*. Burkly represented the Harringtons in the lawsuit commenced by Plaintiff. *Id*. at 4. According to Plaintiff, Burkly, whom he has never met, has been running a smear campaign against him. *Id.* at 3.

Plaintiff asked his long time medical care provider, Defendant Marvin Day, RPA

second amended complaint, he will be required to file with it an amended application to proceed *in forma pauperis* that includes complete disclosure with regard to each request for information. If the amended application shows Plaintiff does not qualify, the Court will revoke the grant of *in forma pauperis* status.

("Day"), to prepare an update on his medical condition. *Id*. The updated information was filed

with Judge McGrath in connection with the litigation. *Id*. Plaintiff claims that Burkly and Day

got together and went through Plaintiff's private and confidential medical history in four letters

from Day to Plaintiff that were covered by the physician-patient privilege, HIPAA, the ADA,

other federal and state laws, and the Glens Falls Hospital patient rights.[2] *Id*. at 4. Plaintiff

contends that he had asked Day for a letter for the state court only to show Judge McGrath why

he might miss court from time to time and "never hired Burkly or W. Marvin Day RPA to

represent or consult on my medical conditions," and "never signed any release or discussed the

situation with Burkly or Day."[3] *Id*.

Plaintiff claims that as a part of her smear campaign, Burkly, using Day, submitted an

affidavit in the state court litigation accusing Plaintiff of having forged Day's signature on the

first letter. *Id*. Day claimed that although the information in the letter was accurate, the signature

was not his. *Id*. Burkly also asserted that in the state court proceeding Plaintiff had filed a

falsified document containing a chronological list of ten medically needed hospitalizations over a

ten month period. *Id*. Plaintiff contends that none of the medical information used by Burkly

was valid for use in defending the Harringtons on Plaintiff's breach of contract claim. *Id*.

---

[2] It is unclear from the Plaintiff's Amended Complaint whether the allegedly confidential medical information reviewed by Burkly and discussed with Day was material given to Judge McGrath and obtained by Burkly in connection with the litigation in Rensselaer County Supreme Court, or was information obtained directly from Day with or without Plaintiff's authorization. Inasmuch as Plaintiff identifies the first letter allegedly disclosed to Burkly as "Exhibit A," presumably in the state court proceeding, at least some of the medical information was likely disclosed in the litigation. *Id*. at 4.

[3] According to Plaintiff, when Day had provided him medical updates to attorneys or judges on at least six prior occasions, Day had required a signed medical release but required no release in this case. *Id*. at 4.

Plaintiff fired Day after the disclosure having decided he was not trustworthy. *Id.*

Plaintiff has also alleged that Burkly filed an affidavit asking the court to dismiss his case because an affidavit submitted by Plaintiff had an outdated notary stamp. *Id*. at 12. Plaintiff has named the notary, Amber Marriott as a Defendant for using the outdated stamp. *Id*.

### B.      Plaintiff's Property Tax Dispute with the Town of Whitecreek

Plaintiff's property at 103 CR 71 Cambridge, New York is located in the Town of Whitecreek. *Id*. at 6. Plaintiff has alleged that the Town of Whitecreek tax collector and tax assessor, improperly and with the intent to steal Plaintiff's property for non-payment of real property taxes, have mistakenly denied him his STAR and disability exemptions on his real estate taxes and have relied upon mistaken information regarding where Plaintiff and his family have been living and where his son has been attending school.[4] *Id*. at 6-7.

According to Plaintiff, during the years 2009 and 2010, his annual real property taxes on the property were $456.00. *Id*. at 6. Initially Plaintiff received a tax bill in the same amount for 2011. *Id*. at 7. However, following denial of his STAR and disability exemptions, Plaintiff was sent a superseding bill in the amount of $1178.90. Plaintiff appears to suggest that he was wrongfully denied his STAR and disability exemptions in 2011 as a result of Burkly's submission of documents she had concocted and submitted indicating that Plaintiff was committing tax fraud with respect to his Whitecreek property and school taxes. *Id*. at 6-7. Plaintiff denies committing fraud. *Id.*

Plaintiff has alleged that his initial tax bill for 2012, which he paid, was $456.00 *Id*. at 7.

---

[4] The New York State School Tax Relief Program (STAR), provides homeowners with partial exemptions from school property taxes on qualified real property. *See* New York Real Property Tax Law § 425.

However, that bill was superseded by a bill for $1,285.00 after his STAR and disability exemptions were taken away because Plaintiff's property had been so badly vandalized on two occasions, it became uninhabitable in June of 2010 and again from May through October 2012. *Id*. at 7.

Plaintiff's STAR and disability exemptions were restored in 2013, and according to the Amended Complaint, he received a school tax bill for $2.23, which he paid. *Id.* However, he did not receive a property tax bill. *Id.* It turned out that the property tax bill had been sent to his old address, and when he received the bill, it was $2,996.00 plus fees for a total of $3,189.00. *Id.* Plaintiff was subsequently told by the Town of Whitecreek that if he did not pay his property taxes by November of 2013, his property would be sold for non-payment of taxes. *Id*. at 8.

Plaintiff also complains that the Town of Whitecreek tax assessor failed to reduce his tax assessment after being informed by Plaintiff that the value of his property had decreased by $20,000 as a result of vandalism. *Id.* at 7. According to Plaintiff, the value of the property decreased from $59,000 to $29,000. *Id*.

### C.   Town of Whitecreek's Failure to Replace the Town Justice and Claims Against the Town Justice Challenging Judicial Determinations

Plaintiff claims that the Whitecreek Town Justice, who is about eighty years old, suffers from memory loss, dementia, or early Alzheimers, and that the Town has a duty to its citizens to watch when a person gets too old to handle a job that entails people's lives and their freedom. *Id.* at 8. The Whitecreek Town Justice, who is also the Cambridge Town Justice, has run unopposed for both positions. *Id.*

Plaintiff has alleged that he appeared before the Whitecreek Town Justice eleven times in

2011-2013 to evict a non-paying tenant. The Town Justice kept forgetting what documents had been filed in the case, what had transpired in court, and the rulings he had made, resulting in the tenant continuing to reside in Plaintiff's property from June 6, 2011 through May 30, 2012, without paying any of the $8,050.00 rent due, and causing $5,867.90 in property damage. *Id.* at 9. According to Plaintiff, in one instance the Whitecreek Town Justice told Plaintiff's wife that she had to obtain service documents from the Clerk of the Cambridge Justice Court and after she had done so, the Whitecreek Town Justice forgot about it and dismissed the case when the tenant told the court that Plaintiff rather than his wife had done the service documents. *Id.*

Plaintiff also complains about the Town Justice's handling of the Harrington's small claims action commenced for recovery of the down payment. *Id.* at 11. The allegations in the Amended Complaint regarding the Harrington action are largely incomprehensible but may reasonably be construed as requesting that the district court invalidate the Justice Court's finding in the Harrington's favor in the amount of $1,515.00. *See id.* at 11.

### D.  Medical Malpractice

Plaintiff claims that Day and Defendant Granville Family Health Center committed gross negligence and medical malpractice by failing to provide the medications, minerals and vitamins he needs because of severe medical issues resulting from seven surgeries and complications over the past year. *Id.* at 5. Plaintiff contends that he is supposed to take approximately twenty-six medications two or three times a day, including muscle relaxants and two narcotics for chronic pain, and that the staff at the clinic routinely makes mistakes in calling in prescriptions so that Plaintiff runs out of needed medication. *Id.* Plaintiff also claims to be having an ongoing fight with Medicare Part D and Medicaid because they have stopped paying for the vitamins and

minerals he needs to survive having had his stomach and intestines removed. *Id.*

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325

(1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua

sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In addition, "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there

is "diversity of citizenship" and the amount in controversy exceeds $75,000.00 (28 U.S.C. § 1332). Federal courts have an independent obligation to resolve any doubt over whether they have subject matter jurisdiction over a case. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (2004). Determining the existence of subject matter jurisdiction is a threshold inquiry. *See* Federal Rule of Civil Procedure Rule 12(h)(3) ("if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see also United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 163, 170-71 (2d Cir. 2003) ("We have . . . urged counsel and district courts to treat subject matter jurisdiction as a threshold issue for resolution."). Therefore, the Court's initial review under 28 U.S.C. § 1915(e) must include consideration of whether the court has subject matter jurisdiction over Plaintiff's claims. *See, e.g., Smith ex. rel. Bey v. Kelly*, No. 12-CV-2319, 2012 WL 1898944, at *2, 2012 U.S. Dist. LEXIS 72884, at *4-5 (E.D.N.Y. May 24, 2012) (court is obligated to analyze whether subject matter jurisdiction exists as a part of § 1915(e) initial review and to dismiss the complaint when subject matter jurisdiction is found lacking).[5]

## III. ANALYSIS

### A. Federal Claims Regarding Disclosure of Confidential Medical Information

Plaintiff claims that Day's disclosure to Burkly of Plaintiff's confidential medical information contained in four letters Day had written on Plaintiff's behalf violated HIPAA, the ADA and Plaintiff's federal privacy rights.[6]

---

[5] Copies of unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) (*per curiam*).

[6] Plaintiff has not referenced the civil rights statute at 42 U.S.C. § 1983 in his Amended Complaint. (See Dkt. No. 3.) However, he has alleged the violation of his civil rights, *id.* at 1,

1.    <u>HIPAA</u>

Court have overwhelmingly concluded that there is no private right of action under

HIPAA.  *See, e.g., Wilkerson v. Shinseki,* 606 F.3d 1256*, 1267 n.4 (10th Cir. 2010); *Miller v.

Nichols*, 586 F.3d 53, 59 (1st Cir. 2009);  *Acara v. Banks*, 470 F. 3d 569, 572 (5th Cir. 2006);

*Rosado v. Herard*, No. 12 Civ. 8943 (PGG) (FM), 2013 WL 6170631, at *3, 2013 U.S. Dist.

LEXIS 169068, at *8-9 (S.D.N.Y. Nov. 25, 2013), *Report and Recommendation adopted in part

and modified in part on other grounds*, 2014 WL 1303513, 2014 U.S. Dist. LEXIS 40172

(S.D.N.Y. Mar. 24, 2014);  *Mascetti v. Zozulin*, No. 3:09 Civ. 963 (PCD), 2010 WL 1644572, at

*4, 2010 U.S. Dist. LEXIS 39003, at *13 (D. Conn. Apr. 20, 2010); *Cassidy v. Nicolo*, No. 03

Civ. 6603 (CJS), 2005 WL 3334523, at *5, 2005 U.S. Dist. LEXIS 34160, at *17-18 (W.D.N.Y.

Dec. 7, 2005) (collecting cases).  Accordingly, I recommend that Plaintiff's HIPAA claim against

Defendants Day and Burkly be dismissed with prejudice.[7]

2.    <u>ADA</u>

Title I of the ADA provides protection from discriminatory adverse employment actions

to persons with physical or mental impairments who are qualified to perform the essential

functions of their positions, with or without reasonable accommodations.  *See Ryan v. Grae &

Rybicki*, 135 F.3d 867, 869-70 (2d Cir. 1998).  Plaintiff has alleged no facts stating a claim

---

and in light of Plaintiff's *pro se* status, I have construed his Amended Complaint as intending to
assert claims under § 1983.

[7] Plaintiff may have intended to name the Glens Falls Hospital as a defendant in this
action.  However, there are no allegations in the Amended Complaint suggesting any
involvement by the hospital in either Plaintiff's medical records or medical malpractice claims,
and I recommend that the Amended Complaint be dismissed without prejudice as against the
hospital.

against Day or Burkly under Title I of the ADA.[8]

Title II of the ADA applies to public services and provides in relevant part at 42 U.S.C.

§ 12132 that: "[N]o qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs or activities of

a public entity, or be subjected to discrimination by any such entity." *See Lincoln Cercpac v.*

*Health and Hospitals Corp.*, 920 F. Supp. 488, 497 (S.D.N.Y. 1996) ("To establish a violation of

Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability, (2) he or

she is being excluded from participation in or being denied the benefits of some service, program

or activity by reason of his or her disability, and (3) the entity which provides the service,

program or activity is a public entity.") (citations and internal quotation marks omitted). Plaintiff

has alleged no facts in his Amended Complaint that state a claim under Title II of the ADA.

Title III of the ADA applies to public accommodations and provides that "[n]o individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, a plaintiff must allege

that he is disabled as defined by the ADA and that the defendant owns or operates a public

accommodation and has discriminated against the plaintiff within the meaning of the ADA. *See*

---

[8]  42 U.S.C. § 12112(d) restricts an employer's disclosure of confidential medical
information gained by an employer as a result of a medical examination or inquiry made in
connection with employment. *See Medlin v. Rome Strip Steel Co., Inc.,* 294 F. Supp. 2d 279, 293
(N.D.N.Y. 2003). Since no employment situation is alleged in Plaintiff's Amended Complaint,
the provision has no application to Day's alleged disclosure of confidential medical information
to Burkly.

*Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). Plaintiff has alleged no facts in his Amended Complaint that state a claim under Title II of the ADA.

Given Plaintiff's failure to include any factual allegations whatsoever in his Amended Complaint suggesting that he may have a claim under the ADA, or that Day or Burkly would have any liability under the Act, I recommend that his claim that his ADA claim against Day and Burkly be dismissed with prejudice.[9]

3.      Constitutional Right to Privacy

Although Plaintiff has not specifically alleged a violation of his constitutional rights in connection with the alleged disclosure of his confidential medical information, given his *pro se* status and general claim that his civil rights have been violated, I have considered whether Plaintiff has stated a § 1983 claim against Day and Burkly with regard to the disclosure and concluded that he has not.

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws

---

[9]   Although ordinarily I would recommend allowing Plaintiff the opportunity to amend his claim under the ADA, I am recommending that the claim be dismissed with prejudice because the allegations in his Amended Complaint establish that his claims are not even remotely related to the ADA, and amendment would be futile.

of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ___ U.S. ___,

131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The

purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its

reach merely private conduct, no matter how discriminatory or wrongful."[10] *Am. Mfrs. Mut. Ins.*

*Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.'"). Private actors have been found to engage in "state action" when they

are "willful participant[s] in joint activity with the State or its agents."[11] *Adickes v. S.H. Kress &*

---

[10] A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist. LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

[11] The Supreme Court has identified other instances where a private party's actions may be fairly attributed to state action, including: (1) where the challenged action results from the State's exercise of coercive power; (2) when the State provides significant encouragement, either overt or covert; (3) when a nominally private entity is controlled by an agency of the State; (4) when a private entity has been delegated a public function by the State; and (5) when the private entity is entwined with governmental policies, or the government is entwined in its management

*Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

The Supreme Court has recognized a constitutional privacy right under the Fourteenth Amendment protecting "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The Second Circuit has held that the right to privacy encompasses a right to confidentiality regarding "information about the state of one's health." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."). Whether or not a medical condition is sufficiently serious for the constitutional right to attach is decided on a case-by-case basis. *See Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011) (medical condition both serious in nature and of a type that is "excruciatingly private and intimate in nature such as those likely to provoke . . . an intense desire to preserve one's medical confidentiality merits constitutional protection.").

The allegations in Plaintiff's Amended Complaint regarding his medical condition do not appear to be of the type that would be found to be "excruciatingly private and intimate in nature" for purposes of stating a § 1983 claim for violation of his Fourteenth Amendment right to privacy.[12] *Matson*, 631 F.3d at 66. Even if the allegations were deemed sufficient, there are no facts alleged in Plaintiff's Amended Complaint that plausibly suggest that either Day or Burkly

---

or control. *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001). The allegations in the Amended Complaint do not fall within any of these other instances.

[12] Plaintiff alleges that he had seven surgeries over the course of a year, that he has had his stomach and intestines removed, and that he is required to take numerous medications. (Dkt. No. 3 at 5.)

was engaged in anything other than private conduct with regard to the alleged disclosure of Plaintiff's confidential medical information.  Therefore, no matter how wrongful their conduct with regard to Plaintiff's confidential medical records, if it was indeed wrong at all, their private conduct is not within the reach of § 1983, *see Sullivan*, 526 U.S. at 50, and I recommend that the claim be dismissed.

Although it appears extremely unlikely that Plaintiff will be able to state a § 1983 claim against Defendants Day and Barkly with regard to his medical records,[13] giving due deference to his *pro se* status, I recommend that the § 1983 Fourteenth Amendment claim be dismissed without prejudice.

### B.      Federal Claim Regarding Property Tax Dispute with the Town of Whitecreek

Plaintiff claims that the Town of Whitecreek tax assessor and tax collector have been attempting to steal his property by improperly denying him STAR and disability exemptions to which he is entitled, relying upon misinformation as to where he and his family were living, failing to reduce his assessment when informed by him of the decrease in value caused by vandalism, and informing him that his property would be sold in November of 2013 for failure to pay property taxes.  (Dkt. No. 3 at 6-8.)   Plaintiff has failed to allege a specific violation of his

---

[13]  Even in the unlikely event Plaintiff is able to show that Day and Burly were acting under color of state law, his Amended Complaint suggests the possibility that Plaintiff himself may have disclosed the information and placed it in issue in the litigation, in which case they may have become public records not covered by the right to privacy, or he may have waived his right to keep the information confidential.  (Dkt. No. 3 at 3-5.)  *See Pelosi v. Spota*, 607 F. Supp. 2d 366, 373-74 (E.D.N.Y. 2009) (right to privacy does not extend to matters of public record and judicial records may be a matter of public record); *Giaccio v. City of New York,* 502 F. Supp. 2d 380, 388 (S.D.N.Y. 2007) (plaintiff's own disclosure of his positive drug test eliminates any expectation of privacy), *aff'd*, 308 F. Appx. 2009 (2d Cir. 2009).

constitutional rights with respect to the alleged wrongdoing by the Defendant Town of Whitecreek and its tax assessor and tax collector. (*See generally* Dkt. No. 3.) Construing his Amended Complaint liberally, I have concluded that Plaintiff may be attempting to assert a § 1983 claim for deprivation of property without due process under the Fourteenth Amendment. I have also concluded, however, that the district court is deprived of subject matter jurisdiction over Plaintiff's § 1983 due process claim by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and principles of comity.[14]

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA applies to state, local, and municipal taxes. *See Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) (the TIA "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."); *Bernard v. Village of Spring Valley, N.Y.*, 30 F.3d 294, 297 (2d Cir. 1994) ( TIA "is rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations, and was written primarily to limit federal court interference with local tax matters"). The TIA deprives district courts of jurisdiction even when a plaintiff's claim rests upon constitutional grounds. *Heimbach v. Chu*, 744 F.2d 11, 15 (2d Cir. 1984) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)).

Plaintiff's Amended Complaint can be read as seeking injunctive relief to the extent he wants the district court to prevent the sale of his property for failure to pay property taxes levied

---

[14] Where it is applicable, the Tax Injunction Act bars federal subject matter jurisdiction. *See Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 470 (1976).

by the Town of Whitecreek; declaratory relief to the extent he may be asking the district court to rule that the Town and its tax assessor and tax collector have violated his Fourteenth Amendment due process rights by denying him exemptions to which he is entitled and failing to reduce the assessment of his property; and money damages. (Dkt. No. 3 at 6-8, 13-14.) Federal courts are precluded from exercising jurisdiction over state and local tax assessments regardless of the type of relief sought. *Id.* As explained by the Second Circuit, "[w]hile it is the Tax Injunction Act that prevents federal courts from giving injunctive relief, or declaratory relief, as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." *Long Island Lighting Co. v. Brookhaven ("LILCO")*, 889 F.2d 428, 431 (2d Cir. 1989); *see also Fair Assessment in Real Estate Ass'n. v. McNary*, 454 U.S. 100, 113-14 (1981) (prohibition of § 1341 applies to actions for damages under § 1983 because an action for damages would be as intrusive as an equitable action, and for a plaintiff to recover damages, the court would have to find that the tax system violated some constitutional right, which would amount to an effective declaratory judgment regarding constitutionality of the tax).

Furthermore, it is well-settled that "the remedies available in New York state courts are sufficient to protect [a] plaintiff's rights." *Moore v. Trippe*, 743 F. Supp. 201, 210 (S.D.N.Y. 1990). As explained in *Greenberg v. Town of Scarsdale*, No. 09 Civ. 2281 (SCR) (PED), 2009 WL 7765836, at *4, 2009 U.S. Dist. LEXIS 130775, at *12 (S.D.N.Y. Oct. 16, 2009), *Report and Recommendation adopted at* 2011 WL 1118709, 2011 U.S. Dist. LEXIS 30776 (S.D.N.Y. Mar. 24, 2011), *aff'd*, 477 F. Appx. 849 (2d Cir. 2012):

Under New York law, the normal method for challenging the

validity of real property assessments is through the procedures in
Article 7 of the Real Property Tax Law.  New York law also
provides a declaratory judgment procedure, as well as expedited
review of official action through a [Civil Practice Laws and Rules]
Article 78 proceeding.  A claim alleging improper, selective
treatment in the assessment of property taxes can also be raised in a
§ 1983 action in state court.  (citations and internal quotation
marks omitted).

*See also Sanzotta v. Williams*, No. 5:98-CV-0730 (RSP/DNH), 1998 WL 274848, at *2, 1998

U.S. Dist. LEXIS 7907, at *6 (N.D.N.Y. May 27, 1998)  ("The Second Circuit has determined

that New York provides taxpayers with several remedies affording them the opportunity to raise

all constitutional challenges thereto, and that access to the federal courts [to raise these

constitutional challenges] is therefore barred by the [Tax Injunction] Act and the principles of

comity.") (citing *LILCO*, 889 F.2d at 431).

Because I find that the TIA deprives the District Court of subject matter jurisdiction over

Plaintiff's property tax claims against the Town of Whitecreek and it tax assessor and tax

collector – a problem that cannot be corrected by a better pleading – I recommend that the claims

be dismissed with prejudice.[15]

### C.    Federal Claims Regarding the Town of Whitecreek and its Town Justice

Plaintiff claims that the Town Justice in the Town of Whitecreek is not able to perform

his job any longer and, as a result, has prevented Plaintiff from evicting a non-paying tenant on a

number of occasions, and has not handled the Harrington small claims court matter against

Plaintiff properly, resulting in a finding in the Harrington's favor in the amount of $1,515.00.

---

[15]  Plaintiff has named the WCRPTS as a defendant, presumably with regard to his
property tax claim.  However, the Amended Complaint is devoid of factual allegations of
wrongdoing by that defendant, and I therefore recommend dismissal of the Amended Complaint
as against it without prejudice.

Plaintiff has not identified a constitutional claim with regard to the Town Justice matter but may intend to assert a claim under § 1983 for denial of due process under the Fourteenth Amendment.

With regard to the Town of Whitecreek, in order to establish municipal liability under § 1983, the plaintiff must demonstrate that the alleged constitutional violation was caused by a municipal "policy or custom." *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978). Plaintiff has not alleged facts plausibly showing that the Town Justice's continued presence on the bench resulted from a Town of Whitecreek policy or custom. In fact, under the N.Y. Constitution, art. 6, § 22, the State Commission on Judicial Conduct is the body empowered to "receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system, in the manner provided by law; and . . . [to] determine that a judge or justice be admonished, censured or removed from office for cause . . . or that a judge or justice be retired for mental or physical disability preventing the proper performance of his judicial duties." N.Y. Const., art. 6, § 22(a); *see also* New York Judiciary Law § 44(1).

In *Quinn v. State Commission on Judicial Conduct*, 446 N.Y.S. 2d 3, 7 (1981), the New York Court of Appeals recognized that:

> . . . the [New York State] Constitution expressly states that "the court of appeals may impose a less or more severe sanction prescribed by this section than the one determined by the commission, or impose no sanction" (N.Y. Const., art. VI, § 22, subd. d). ***The implementing legislation of subdivision 7 of section 44 of the Judiciary Law then carefully reposes in this court alone the extraordinary power and sanction to remove or retire a judicial officer.*** (emphasis added).

The Town of Whitecreek, having no authority to remove the Town Justice from the bench

or compel his retirement, cannot be found liable for failing to do so. Moreover, "[i]t is well settled that judges are absolutely immune from suit for any judicial actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp.2d 39, 40 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Immunity extends only to actions performed by the judge in his or her official capacity. *DuQuin*, 320 F. Supp. 2d at 41. Immunity applies no matter how erroneous an action might be and no matter how injurious the consequences to plaintiff. *Young,* 41 F.3d at 51.

There are no allegations suggesting that the Whitecreek Town Justice was acting outside the scope of his judicial responsibilities with respect to Plaintiff's eviction proceedings or the Harrington small claims matter. Therefore, the Town Justice is absolutely immune from the Plaintiff's claims against him.

Even if the Town Justice did not enjoy immunity, if he did enter judgment in the Harrington's favor in the small claims action, Plaintiff's claim would likely be barred under the *Rooker-Feldman* doctrine, which provides that "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature."[16] *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995). Under the doctrine, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments" are barred from federal court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

---

[16] *See Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) (United States Supreme Court alone can hear a direct appeal from a state court decision); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (district court is without jurisdiction over a challenge to a state court judgment arising out of judicial proceedings even of the state court is alleged to have acted unconstitutionally).

Given the foregoing, and because the problems with Plaintiff's claims cannot be corrected by a better pleading, I recommend that Plaintiff's claims against the Town of Whitecreek and the Town Justice be dismissed with prejudice.[17]

**D.      Plaintiff's State Court Claims**

Plaintiff has asserted numerous state law claims against various of the defendants.  On his claim that his right to confidentiality of his medical records was violated in connection with the trailer litigation before Judge McGrath, Plaintiff claims Day and Burkly tortiously interfered with his right to do his own private personal business, violated state confidentiality/privacy laws, and libeled, slandered, and defamed him.  (Dkt. No. 3 at 5.)

Plaintiff has also alleged gross negligence and medical malpractice claims against Defendants Day and Granville Family Health for failure to provide sufficient medicines, minerals, and vitamins for his severe medical condition arising out of having his stomach and intestines removed.  *Id*. at 5.  On his property tax dispute claim, Plaintiff has asserted state claims for invasion of privacy, filing false affidavits, and libel, slander and defamation against Burkly. *Id*. at 8.  He has also alleged negligence claims against the Town of Whitecreek for incompetence, improper computation of taxes, and failure to deduct damage depreciation from taxes in connection with his property tax claim.  *Id.* at 8.

---

[17]  Plaintiff has named as defendants the Town of Whitecreek Justice Court Clerk, Town of Whitecreek Supervisor Bob Shea, Town of Cambridge Justice Court, and Town of Cambridge Mayor, Valerie Reagan.  Presumably Bob Shea has been named with respect to the Town of Whitecreek's failure to remove the Town Justice from the bench.  The Town of Cambridge defendants have presumably been named because the Town of Whitecreek Justice is also the Town of Cambridge Justice and sent Plaintiff's wife to the Town of Cambridge to deal with paperwork for a Town of Whitecreek matter.  However, the Amended Complaint is devoid of allegations suggesting wrongdoing of any kind against any of those defendants, and I recommend dismissal of the Amended Complaint as against them without prejudice.

On his Town of Whitecreek Town Justice claim, Plaintiff claims that the Town has negligently failed in its responsibility to remove the Town Justice from office on the grounds that he is no longer capable of properly performing his duties. *Id*. at 8, 12. Plaintiff has also asserted a negligence claim against Amber Marriot for using an expired notary stamp, and a general claim against Burkly for running a smear campaign against him.[18] *Id.* at 13.

Inasmuch as I have recommended that all of Plaintiff's federal claims be dismissed, with leave to amend as to certain defendants and only one of the claims asserted in the Amended Complaint, I also recommend that the district court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to reconsideration in the event Plaintiff files a second amended complaint. *See Kolari v. New York-Presbyterian Hosp*., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 3) be dismissed in its entirety as follows:

1. Plaintiff's federal claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as

---

[18] It is unclear whether Plaintiff intended to name the Glens Fall National Bank Corp. as a defendant independent of Amber Marriot. It is clear, however, that the Amended Complaint (Dkt. No. 3) is devoid of allegations of wrongdoing by the Bank, and I recommend that if Plaintiff did intend to name the Bank, the Amended Complaint be dismissed as against it.

follows:

        a.      Plaintiff's HIPAA and ADA claims against Defendants Day and Burkly be dismissed with prejudice;

        b.      Plaintiff's § 1983 claim for violation of his right to privacy with regard to his medical records under the Fourteenth Amendment against Defendants Day and Burkly be dismissed without prejudice and with leave to amend in the event Plaintiff is able to allege facts plausibly showing that Day and Burkly were acting under color of state law;

        c.      Plaintiff's § 1983 claim for violation of his Fourteenth Amendment right to due process with regard to his Town of Whitecreek real property tax claim against the Town of Whitecreek and its tax assessor and tax collector be dismissed with prejudice as barred under the Tax Injunction Act, 28 U.S.C. § 134;

        d.      Plaintiff's § 1983 claim for violation of his Fourteenth Amendment right to due process with respect to the Town of Whitecreek's failure to remove the Town Justice from office and the Town Justice's errors in handling matters before him involving Plaintiff be dismissed with prejudice;

2.      The Amended Complaint be dismissed for failure to state a claim as against Defendants Washington County Real Property Tax Services, Town of Whitecreek Justice Court Clerk, Town of Whitecreek Supervisor Bob Shea, Town of Cambridge Justice Court, and Town of Cambridge Mayor Valerie Reagan, Glens Falls Hospital, and Glens Falls National Bank Corp, without prejudice and with leave to amend; and

3.      The Court exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to reconsideration in the event Plaintiff files a second amended complaint; and it is hereby

**ORDERED** that in the event Plaintiff files a second amended complaint, that he file with it an amended application to proceed *in forma pauperis* that includes complete disclosure with regard to each request for information; and it is further

**ORDERED** that any amended complaint filed in this action include factual allegations describing the role of each named defendant sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and the amended complaint should be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon or incorporate by reference pleadings previously filed in this action; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **<u>Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.</u>** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve on Plaintiff a copy of this Order and Report-Recommendation, along with a copy of the unpublished decisions in *Smith ex. rel. Bey v. Kelly*, No. 12-CV-2319, 2012 WL 1898944 (E.D.N.Y. May 24, 2012), *Rosado v. Herard*, No. 12 Civ. 8943 (PGG) (FM), 2013 WL 6170631 S.D.N.Y. Nov. 25, 2013); *Mascetti v. Zozulin*, No. 3:09 Civ. 963 (PCD), 2010 WL 1644572 (D. Conn. Apr. 20, 2010); *Cassidy v. Nicolo*, No. 03 Civ. 6603 (CJS), 2005 WL 3334523 (W.D.N.Y. Dec. 7, 2005); *O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948 (N.D.N.Y. Feb. 10, 2010); *Greenberg v. Town of Scarsdale*, No. 09 Civ. 2282 (SCR) (PED), 2009 WL 7765836 (S.D.N.Y. Oct. 16, 2009); and *Sanzotta v. Williams*, No. 5:98-CV-0730 (RSP/DNH), 1998 WL 274848 (N.D.N.Y. May 27, 1998) .

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: April 21, 2014
　　　　Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge